IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONY E. PASCHAL <br> 715 7th Street SE <br> Washington, DC 20003 <br><br> Plaintiff, <br><br> v. <br><br> LAURA L. NUSS <br> Director <br> DC Department on Disability Services <br> 1125 15th Street, NW <br> Washington, DC 20006 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Tony E. Paschal brings this complaint against Laura L. Nuss, Director of the DC Department on Disability Services ("Defendant"), in her official capacity, and alleges as follows:

### BACKGROUND AND PARTIES

1. This civil action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203; 42 U.S.C. § 12132; and 42 U.S.C. § 12112(a).

2. The Plaintiff is Tony E. Paschal, a United States citizen and a resident of Washington, DC. Beginning October 29, 2010, Plaintiff has been employed by the Defendant in the District of Columbia Department on Disability Services ("DDS").

3. The Defendant is Laura L. Nuss, Director of the DC Department on Disability Services, which is located in the District of Columbia.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. The actions complained of occurred in Washington, DC. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

6. Mr. Paschal is an individual with a disability. He has physical conditions that substantially limit one or more major life activities, including lupus, type 1 diabetes, and rheumatoid arthritis.

7. DDS is a local government agency that oversees and coordinates services for residents with disabilities. The Rehabilitation Services Administration ("RSA") is an agency within DDS that provides employment marketing, placement, and vocational rehabilitation services for persons with mental or physical disabilities.

8. DDS advocates for individuals with disabilities who seek employment in DC. According to the agency's mission statement, the agency's mission is to provide "innovative, high quality services that enable people with disabilities to lead meaningful and productive lives as vital members of their families, schools, workplaces and communities in every neighborhood in the District of Columbia."

9. The DDS Business Relations Unit provides services to disabled persons seeking employment and employers interested in hiring qualified individuals. In addition, the unit screens, recruits, and retains job applicants. The unit also provides guidance to employers who want to retain existing employees with disabilities.

10. As a Business Relations Specialist within the RSA division, Mr. Paschal is responsible for outreach to employers and engaging employers with job training and placement opportunities. In particular, Mr. Paschal uses the relationships he has created with the business community to find job opportunities for qualified DDS clients.

11. Mr. Paschal began working at DDS on October 29, 2010. Mr. Paschal informed DDS about the nature of his disability.

12. On or after October 29, 2010, Mr. Paschal was placed under the direct supervision of Sylvia Bailey-Charles, the Supervisory Business Relations Specialist for the RSA.

13. Starting in November 2011, Ms. Bailey-Charles repeatedly made negative, derogatory statements to Mr. Paschal and other staff about people with disabilities—in particular, the agency's clients. For example, Ms. Bailey-Charles said that disabled persons should be relegated to "cleaning toilets . . . because they were handicapped." In one case, Ms. Bailey-Charles sent job notices for janitorial and dishwashing work to a client who was a former practicing physician with a medical degree.

14. As Ms. Bailey-Charles continued to make negative, derogatory comments about people with disabilities, Mr. Paschal considered meeting with an EEO counselor to discuss the issue. He made an entry in his online work calendar indicating that he had scheduled a meeting with an EEO counselor for May 2, 2012.

15. On or about May 22, 2012, Ms. Bailey-Charles and Sharon Vaughn-Roach, the Program Operations Manager for the DC Rehabilitation Service Administration, met with Mr. Paschal. Ms. Bailey-Charles indicated that she had read his May 2 calendar entry and threatened to lower Mr. Paschal's pay grade and put him on a Performance Improvement Plan ("PIP").

16.   Once an employee is placed on a PIP, he is subject to reassignment, demotion, or removal for failure to meet the PIP standards. On information and belief, the PIP remains in the employee's personnel file, and it would negatively affect an employee's chances for promotion within the DC government.

17.   Mr. Paschal met with EEO counselor David Prince on May 29, 2012.

18.   One June 26, 2012, Ms. Bailey-Charles forwarded a PIP to Mr. Paschal. She explained that her decision to issue the PIP was based on Mr. Paschal's alleged lack of performance during the performance period, which ran from October 2011 through September 2012.

19.   Throughout Mr. Paschal's employment at DDS, including this performance period, Ms. Vaughn-Roach, co-workers, and clients repeatedly praised his quality of his work and dedication to his clients. For example, in a December 3, 2012 email to Laura Nuss, DDS Director, a client highlighted Mr. Paschal's efforts to help her find a job. The client noted: "Mr. Paschal definitely is an expert on federal employment for the disable[d]—his knowledge is invaluable. The rapport he has established with disability/HR Reps. within the federal government is also invaluable."

20.   On August 13, 2012, Mr. Paschal filed a Charge of Discrimination with the DC Office of Human Rights ("OHR"). The Charge alleged that DDS discriminated against Mr. Paschal based on his disability. The Charge alleged hostile work environment and retaliation claims.

21.   After filing the Charge, Mr. Paschal continued to feel intimidated by Ms. Bailey-Charles. For example, on November 29, 2012, Ms. Bailey-Charles asked Ms. Vaughn-Roach to attend a meeting initially scheduled as a one-on-one meeting between Ms. Bailey-Charles and Mr. Paschal. Ms. Bailey-Charles explained that she asked Ms. Vaughn-Roach to sit in on the meeting because Mr. Paschal was suing the agency. Mr. Paschal stated that he felt intimidated

throughout the meeting and that both Ms. Bailey-Charles and Ms. Vaughn-Roach tried to "bully" him.

22. In November 2012, Ms. Bailey-Charles prevented Mr. Paschal from attending networking events and other meetings that he had routinely attended as part of his work as a Business Relations Specialist. The meetings provided prime networking opportunities for Mr. Paschal on behalf of his clients. By excluding Mr. Paschal from these meetings and events, Ms. Bailey-Charles obstructed Mr. Paschal's ability to perform his job duties.

23. On December 12, 2012, Ms. Bailey-Charles gave Mr. Paschal a negative Annual Performance Evaluation. She rated him as a "Marginal Performer" rating for the October 1, 2011 through September 30, 2012 performance period.

24. Mr. Paschal met with Ms. Bailey-Charles and Ms. Vaughn-Roach on December 27, 2012 for an Annual Performance Review meeting. Both supervisors threatened to terminate Mr. Paschal's employment or demote him.

25. On February 12, 2013, Ms. Bailey-Charles sent Mr. Paschal an email informing him that she was changing his job description. DDS Human Capital later found that Ms. Bailey-Charles violated personnel procedures and Mr. Paschal's union contract when she changed his job description.

26. As a consequence of Defendant's actions, Plaintiff has suffered extreme mental anguish, emotional distress, and humiliation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. On May 5, 2012, Plaintiff initiated administrative proceedings by filing a timely request for EEO counseling.

28. On August 13, 2012, Plaintiff filed a formal Charge of Discrimination on the basis of disability with OHR.

29. On May 15, 2013, OHR issued its Letter of Determination finding No Probable Cause for Mr. Paschal's hostile work environment and retaliation claims.

30. Plaintiff submitted a timely request for reconsideration of OHR's No Probable Cause determination.

31. On July 24, 2013, OHR affirmed the No Probable Cause findings for the hostile work environment and retaliation claims.

32. Plaintiff has exhausted his administrative remedies.

## COUNT I – RETALIATION UNDER THE ADA

33. Plaintiff realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 32 above.

34. Mr. Paschal engaged in statutorily protected activity when he scheduled a meeting and met with an EEO counselor to voice his complaint about Ms. Bailey-Charles' discriminatory comments.

35. On May 22, 2012, Ms. Bailey-Charles met with Mr. Paschal and informed him that she had read his calendar entry regarding his scheduled meeting with the EEO counselor. At this same meeting, she threatened to lower Mr. Paschal's pay grade and place him on a PIP.

36. Ms. Bailey-Charles' threat to lower Mr. Paschal's pay grade and place him on a PIP at the May 22, 2012 meeting; the actual issuance of the PIP on June 26, 2012; and Ms. Bailey-Charles'

negative annual performance evaluation constituted adverse employment actions. The negative performance evaluation and the PIP exposed Mr. Paschal to removal or reassignment, and they had a detrimental effect on his responsibilities and promotion opportunities. These actions were materially adverse because they would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

37. The adverse employment actions and Mr. Paschal's assertion of his rights under the ADA were causally related. The events occurred within only twenty-four days of each other, and Ms. Bailey-Charles mentioned the scheduled EEO counseling—Mr. Paschal's statutorily protected activity—when she threatened to issue the PIP.

## COUNT II – HOSTILE WORK ENVIRONMENT UNDER THE ADA

38. Mr. Paschal realleges and incorporates by reference the allegations set forth above.

39. Mr. Paschal is a qualified individual with a disability, as defined by the ADA, § 42 U.S.C. § 12102(1), in that he has physical conditions that substantially limit one or more major life activities, including lupus, type 1 diabetes, and rheumatoid arthritis.

40. Mr. Paschal was subject to unwelcome harassment from Defendant's employees, namely Ms. Bailey-Charles.

41. Defendant, through its employees, created and perpetuated a hostile work environment against Mr. Paschal based on his disability.

42. The unwelcome harassment was sufficiently severe and pervasive so as to alter the working conditions of Mr. Paschal's employment and create an abusive working environment. Defendant, through its employees, repeatedly made intimidating, offensive, and abusive remarks about disabled individuals. The harassment interfered with Mr. Paschal's productivity and

ability to work to such an extent that it altered the terms of his employment, including his job responsibilities and advancement opportunities.

43. The Defendant knew or should have known of the unwelcome harassment because Mr. Paschal voiced his concerns several times to supervisors in his division. Despite Mr. Paschal's complaints, Defendant failed to take remedial action and the harassment persisted.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter a judgment:

A. declaring that the Defendant has violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12203; 12132; 12112(a).

B. awarding Plaintiff compensatory damages, including damages for his mental anguish and humiliation, in an appropriate amount;

C. awarding the Plaintiff punitive damages for Defendant's willful violation of the ADA;

D. ordering the Defendant to pay Plaintiff's costs, attorneys' fees, and expenses associated with this action; and

E. granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

*/s/ Thomas M. Contois*

Thomas M. Contois
DC Bar No. 464358
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
202.429.3000

COUNSEL FOR TONY E. PASCHAL

October 21, 2013