UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          |   |                                   |
|--------------------------|---|-----------------------------------|
| TONY E. PASCHAL,         | : |                                   |
|                          | : |                                   |
| Plaintiff,               | : |                                   |
|                          | : |                                   |
| v.                       | : |                                   |
|                          | : |                                   |
| DISTRICT OF COLUMBIA,    | : | Civil Action No. 13-1608 (GK)     |
|                          | : |                                   |
| Defendant.               | : |                                   |

### MEMORANDUM OPINION

Plaintiff Tony E. Paschal ("Plaintiff" or "Paschal") brings this action against Defendant the District of Columbia ("Defendant") for retaliation and a hostile work environment in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12203, 12132, and 12112(a).

This matter is presently before the Court on Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment [Dkt. No. 18]. Upon consideration of the Motion, Opposition, and Reply, the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **granted in part and denied in part**, Defendant's Motion for Summary Judgment is **denied without prejudice**, and Plaintiff's Motion for a Stay to Obtain Discovery is **denied as moot**.

## I. BACKGROUND

### A. Factual Background[1]

On October 29, 2010, Plaintiff Tony E. Paschal started work as a Business Relations Specialist with the District of Columbia Department on Disability Services ("DDS"). Second Amended Complaint ("SAC") ¶¶ 2, 10. DDS is a service provider and advocate for individuals with disabilities seeking employment in the District of Columbia. SAC ¶¶ 8-9. Plaintiff's duties for DDS included outreach and engagement with employers to create relationships with the business community. SAC ¶ 10. Plaintiff would leverage those relationships to find job opportunities for qualified DDS clients. SAC ¶ 10.

Plaintiff has lupus, type 1 diabetes, and rheumatoid arthritis, which he alleges substantially limit one or more major life activities, and are thus properly considered disabilities. SAC ¶ 6. Plaintiff informed DDS of the nature of his disability when he was hired. SAC ¶ 11.

---

[1] Defendant has requested Summary Judgment in the alternative to his Motion to Dismiss, but for the reasons set forth below, Summary Judgment is premature at this time.

For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from the Second Amended Complaint ("SAC") [Dkt. No. 11].

Plaintiff alleges that beginning in November of 2011, his direct supervisor, Sylvia Bailey-Charles, "repeatedly made negative, derogatory statements to [him] and other staff about people with disabilities--in particular, the agency's clients." SAC ¶¶ 12, 13. The only such comment specifically alleged in his SAC, however, is that Ms. Bailey-Charles once commented that disabled persons should be "cleaning toilets . . . because they [are] handicapped." SAC ¶ 13. On one occasion, "Ms. Bailey-Charles sent job notices for janitorial and dishwashing work to a [DDS] client who was a former practicing physician with a medical degree." Id.

Plaintiff decided to meet with an EEO counselor to discuss his concerns about Ms. Bailey-Charles. SAC ¶ 14. Despite scheduling a meeting for May 2, 2012, which Plaintiff noted on his online work calendar, Id., it did not take place until May 29, 2012.

In the interim, on or about May 22, 2012, Plaintiff met with Ms. Bailey-Charles and Sharon Vaughn-Roach, the Program Operations Manager for the District of Columbia Rehabilitation Services Administration. SAC ¶ 15. At the meeting, Ms. Bailey-Charles indicated that she had read Plaintiff's calendar entry noting his date for meeting with an EEO counselor. SAC ¶ 15. Plaintiff contends that Ms. Bailey-Charles made two threats at

that meeting: (1) to lower his pay grade, and (2) to put him on a Performance Improvement Plan ("PIP"). SAC ¶ 15.

On May 29, 2012, Paschal met with EEO Counselor David Prince. SAC ¶ 17.

On June 26, 2012, Ms. Bailey-Charles forwarded a PIP to Plaintiff and stated that the decision to issue the PIP was based on his alleged "lack of performance" during the performance period that ran from October 2011 through September 2012. SAC ¶ 18.

On August 13, 2012, Plaintiff filed a Charge of Discrimination with the District of Columbia Office of Human Rights ("OHR"), alleging that he had been discriminated against on the basis of disability. SAC ¶ 20. Plaintiff claims that since filing that charge, he continues to feel "intimidated" by Ms. Bailey-Charles. SAC ¶ 21. On November 29, 2012, Plaintiff again met with Ms. Bailey-Charles and Ms. Vaughn-Roach. Id. At that meeting, he felt that the two managers "bull[ied]" him, but did not allege any specific actions. Id.

In November 2012, at Ms. Bailey-Charles' behest, Plaintiff stopped attending networking events and other meetings that he had routinely attended as part of his work. SAC ¶ 22. Plaintiff alleges that the events and meetings were "prime opportunities" to network on behalf of DDS's clients and that exclusion from

these contacts interfered with his ability to perform his job duties. SAC ¶ 22.

On December 12, 2012, Ms. Bailey-Charles gave Plaintiff a negative Annual Performance Evaluation, rating him a "Marginal Performer" for the period from October 1, 2011 through September 30, 2012. SAC ¶ 23.

On December 27, 2012, Plaintiff met with Ms. Bailey-Charles and Ms. Vaughn-Roach for his Annual Performance Review. SAC ¶ 24. At that meeting, both managers threatened to terminate Plaintiff's employment or to demote him. SAC ¶ 24.

On February 12, 2013, Ms. Bailey-Charles informed Plaintiff that she would change his job description, although that change did not occur because of certain provisions in Plaintiff's union contract and DDS personnel procedures. SAC ¶ 25.

On May 15, 2013, OHR issued a Letter of Determination finding No Probable Cause for Plaintiff's hostile work environment and retaliation claims. SAC ¶ 29. He timely submitted a request for reconsideration, and on July 24, 2013, OHR affirmed its findings. SAC ¶ 30-31.

## B. Procedural Background

On October 21, 2013, Paschal filed his Complaint, alleging retaliation and hostile work environment under the ADA [Dkt. No.

1]. On January 24, 2014, Plaintiff filed his Second Amended Complaint [Dkt. No. 11].

On February 18, 2014, Defendant filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment [Dkt. No. 18]. On March 7, 2014, Plaintiff submitted a Rule 56(d) Motion for a Stay to Obtain Discovery [Dkt. No. 21] and a Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment, and in Support of Plaintiff's Rule 56(d) Motion [Dkt. No. 22].

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences

-6-

derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

## III. ANALYSIS

### A. Hostile Work Environment

In order to adequately plead a claim of hostile work environment, Plaintiff must allege facts showing "that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' . . . 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). The Supreme Court has made clear that in order to prevent anti-

discrimination laws from becoming a "general civility code[,]" "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal citations and quotation marks omitted).

Plaintiff has made only two specific, factual allegations on which to base his hostile work environment claim: (1) Ms. Bailey-Charles' comment that disabled persons should be "cleaning toilets . . . because they were handicapped[;]" and (2) Ms. Bailey-Charles' transmission of job notices for janitorial and dishwashing work to a disabled former practicing physician. SAC ¶ 13.

With respect to "well-pleaded factual allegations[,]" "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. These two instances simply do not satisfy this standard. Without more, the two examples Plaintiff provides are the very "isolated incidents of offensive conduct [that] do not amount to actionable harassment." Smith v. Jackson, 539 F. Supp. 2d 116, 138 (D.D.C. 2008) (quoting Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002)).

Plaintiff does allege that "Ms. Bailey-Charles repeatedly made negative, derogatory statements . . . about people with

disabilities[.]" SAC ¶ 13. However, even if Ms. Bailey-Charles'
single, quoted comment is taken as a representative example,
Plaintiff has not met his burden. Plaintiff must show that
Defendant's conduct was "sufficiently severe or pervasive to
alter the conditions of the victim's employment and create an
abusive working environment." Baloch, 550 F.3d at 1201 (internal
citations and quotation marks omitted). Because Ms. Bailey-
Charles' comment--even if repeated--does not rise to this level
of severity. Count II of the Complaint shall be **dismissed.**

### B. Retaliation

A well-pleaded retaliation claim must allege that: "(1)
[the plaintiff] engaged in protected activity, (2) [the
plaintiff] was subjected to adverse action by the employer, and
(3) there existed a causal link between the adverse action and
the protected activity." Jones v. Wash. Metro. Area Trans.
Auth., 205 F.3d 428, 433 (D.C. Cir. 2000) (internal citations
omitted); Taylor v. Solis, 571 F.3d 1313, 1320 (D.C. Cir. 2009)
("In order to prevail upon a claim of unlawful retaliation, an
employee must show she engaged in protected activity, as a
consequence of which her employer took a materially adverse
action against her."(internal citations and quotation marks
omitted)). Plaintiff argues--and Defendant does not contest--
that he "engaged in a statutorily protected activity when he

-9-

scheduled a meeting with an EEO counselor." SAC ¶ 34. The Court, therefore, must determine whether the conduct alleged by Plaintiff constitutes an adverse action, and if so, whether the pleadings and all reasonable inferences to be drawn from them plausibly present a causal link between the EEO meeting and the alleged retaliatory conduct. _Aktieselskabet_, 525 F.3d at 17; _Jones_, 205 F.3d at 433.

### 1. **Adverse Action**

"Adverse actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." _Baloch v. Kempthorne_, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008) (internal quotation marks omitted). Retaliation actions are "not limited to [those] that affect the terms and conditions of employment." _Burlington N. & Santa Fe Ry. Co. v. White_, 548 U.S. 53, 64 (2006). "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" _Porter v. Shah_, 606 F.3d 809, 817-18 (D.C. Cir. 2010) (quoting _Burlington Northern_, 548 U.S. at 57). However, "petty slights, [and] minor annoyances" are normally not enough to deter workers from exercising their rights. _Burlington Northern_, 548 U.S. at 68.

Plaintiff contends that several of Defendant's actions were materially adverse: Ms. Bailey-Charles' threat and eventual

imposition of the PIP, her assignment of a "Marginal Performer" rating, her threat to lower Plaintiff's pay grade, Ms. Bailey-Charles' and Ms. Vaughn-Roach's threat to terminate or demote Plaintiff, the change in work duties and later threat to change Plaintiff's job description, and Plaintiff's feeling of intimidation and sense that Ms. Bailey-Charles and Ms. Vaughn-Roach tried to "bully" him.

### a. Performance Rating and Performance Improvement Plan

Plaintiff's "Marginal Performer" rating and Performance Improvement Plan ("PIP") are best considered simultaneously because our Court of Appeals has held that together such actions may constitute an adverse action. Porter v. Shah, 606 F.3d 809, 818 (D.C. Cir. 2010). Plaintiff points to Porter, 606 F.3d at 818, as support for his contention that both the rating and the PIP constitute materially adverse actions in this case. Pl.'s Opp'n at 10. Defendant contends that Porter held that a particular performance report was not an adverse action "because it did not affect plaintiff's 'position, grade level, salary, or promotion opportunities.'" Def.'s Reply at 4 (quoting Porter, 606 F.3d at 818).[2]

---

[2] Defendant also argues that the facts of this case are distinct from those in Porter because Plaintiff in this case successfully completed his PIP and successfully appealed his

-11-

In fact, <u>Porter</u> involved two separate interim performance reviews. 606 F.3d at 818. The first "was delivered orally, with no written record placed in Porter's personnel files, and it was superseded by his year-end annual review." <u>Id.</u> The Court of Appeals ruled that this evaluation was not an adverse action. <u>Id.</u> The second evaluation, delivered in a subsequent year, "was in writing [and] . . . was placed in Porter's personnel file[,]" despite a policy that normally excluded interim reviews from personnel files. <u>Id.</u> Moreover, the second evaluation was accompanied by a PIP. <u>Id.</u> This time, the Court of Appeals ruled that "[g]iven the serious consequences affecting Porter's position, grade level, salary, or promotion opportunities, [the second, written] negative assessment together with [a] PIP constituted a material adverse action." <u>Id.</u> (internal quotation marks omitted) (citing <u>Baloch</u>, 550 F.3d at 1199; <u>Taylor v. Solis</u>, 571 F.3d 1313, 1321 (D.C. Cir. 2009)).

Plaintiff alleges that Defendant gave him both a negative performance rating <u>and</u> placed him on a PIP for the performance period that ran from October 2011 to September 2012. SAC ¶¶ 18, 23. Plaintiff further alleges that the "negative performance evaluation and the PIP exposed [him] to [potential] removal or

performance rating. Def.'s Reply at 4-5. Since that argument rests on facts that are not alleged in Plaintiff's pleadings, it cannot be addressed properly in a Motion to Dismiss.

reassignment, and they had a detrimental effect on his responsibilities and promotion opportunities." SAC ¶ 36. Defendant's alleged actions are therefore analogous to the second evaluation considered by the Porter Court and consequently, qualify as materially adverse actions.[3]

Plaintiff need not allege that he was denied a promotion, discharged, or received a salary reduction; he "must point to an action that a reasonable employee would have found materially adverse." Bonnette v. Shinseki, 907 F. Supp. 2d 54, 69-70 (D.D.C. 2012) (internal quotation marks omitted). Plaintiff has done so here.

---

[3]    Defendant looks to other authority to support its view. Citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) and Brown v. Brody, 199 F.3d 446, 457-58 (D.C. Cir. 1999), Defendant contends that a PIP or a negative review can constitute adverse actions only when accompanied by a present effect on grade or salary. Def.'s Mot. at 11-12. However, the Supreme Court's more recent opinion in Burlington Northern, 548 U.S. at 64, makes clear that adverse actions are "not limited to discriminatory actions that affect the terms and conditions of employment." Our Court of Appeals has concluded that the retaliation standard applied in Brown v. Brody--that a plaintiff must show a materially adverse change in the terms and conditions' of employment--was abrogated by Burlington Northern. Steele v. Schafer, 535 F.3d 689, 692-696 (D.C. Cir. 2008).

Moreover, in Porter (decided after Burlington Northern) our Court of Appeals made no finding that Melvin Porter had in fact experienced a reduction in grade or salary. Instead the Court found that "the rating and the PIP could expose him to removal, reduction in grade, withholding of within grade increase or reassignment." Porter, 606 F.3d at 818 (emphasis added).

### b. Threats of Demotion and Termination

Plaintiff alleges that Ms. Bailey-Charles threatened him on two occasions. First, on or about May 22, 2012, Ms. Bailey-Charles "threatened to lower [Plaintiff]'s pay grade or put him on a [PIP]." SAC ¶ 15. Second, in a meeting on December 27, 2012 to discuss his annual performance evaluation, both Ms. Bailey-Charles and Ms. Vaughn-Roach "threatened to terminate [Plaintiff's] employment or demote him." SAC ¶ 24.

The threats of demotion and termination were made during conversations with Plaintiff about the PIP and "Marginal Performance" evaluation. The threats--and their timing and context--therefore, provide strong support to Plaintiff's allegation that the "negative performance evaluation and the PIP exposed [him] to removal or reassignment." SAC ¶ 36.

### c. Change in Duties and Proposed Change in Job Description

Plaintiff relies exclusively on Burlington Northern to support his argument that denial of the opportunity to attend networking events and other meetings constituted an adverse action. Pl.'s Opp'n at 11-12. That case, however, offers only weak support for Plaintiff's position.[4] Burlington Northern

---

[4] Plaintiff, however, is correct to point out that Burlington Northern supersedes previous precedent in this Circuit that would have required adverse actions that affect "the terms and

-14-

involved the transfer of a forklift operator to a general laborer position. There, "the jury had before it considerable evidence that the track laborer duties were by all accounts more arduous and dirtier; that the forklift operator position required more qualifications, which is an indication of prestige; and that the forklift operator position was objectively considered a better job and the male employees resented [the plaintiff] for occupying it." Burlington Northern, 548 U.S. at 71. The conduct Plaintiff alleges does not come close to the conduct in Burlington Northern.

Our Court of Appeals has made clear its "hesitancy to engage in judicial micromanagement of business practices by second-guessing employers' decisions about which of several qualified employees will work on a particular assignment." Baloch v. Kempthorne, 550 F.3d 1191, 1197 (D.C. Cir. 2008); see e.g., Taylor v. Solis, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (an employer did not take an adverse action by "slow[ing] the processing of [an employee's] cases . . . and . . . require[ing] her . . . to submit biweekly reports on the status of her work."). Accordingly, it has held that an employee did not suffer "materially adverse consequences" when he "no longer

conditions of employment" in order to make out a retaliation claim. Steele v. Schafer, 535 F.3d 689, 692-696 (D.C. Cir. 2008).

-15-

attended management meetings or received management-related e-mails and other communications" for "several months[.]" Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

Plaintiff must show that the change in his duties were not just "petty slights" but "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 57, 68. Denial of the opportunity to attend networking events and meetings falls short of that requirement.

Finally, Plaintiff states that the proposed change in job description, if it had come to pass, "would have been more onerous, or would have involved 'duties that are less desirable than others.'" Pl.'s Opp. at 12 (quoting Burlington Northern, 548 U.S. at 70). However, he offers no factual allegations to support his speculation. "Alleged harms" that fall short of "firing or a significant change in benefits" "must not be unduly speculative." Bridgeforth v. Jewell, 721 F.3d 661, 663 (D.C. Cir. 2013) (internal citations and quotation marks omitted). Consequently, the change in duties and proposed change in job description do not, as alleged, constitute adverse actions.

### d.    Bullying and Intimidation

Finally, Plaintiff contends that he felt "intimidated" and "bull[ied]" in a meeting with Ms. Bailey-Charles and Ms. Vaughn-

Roach. SAC ¶ 21. Plaintiff's contentions, without more, are the sort of "petty slights, minor annoyances, and simple lack of good manners" that are not actionable as retaliation. Burlington Northern, 548 U.S. at 68. Moreover, our Court of Appeals has held that even "disproportionate" "profanity-laden yelling" may constitute the variety of "sporadic verbal altercations or disagreements [that] do not qualify as adverse actions for purposes of retaliation claims." Baloch, 550 F.3d at 1199. Consequently, these allegations do not constitute adverse action.

Although, not all of Defendant's alleged conduct rises to the level of a materially adverse action, Plaintiff's allegations related to the threats, negative performance review, and PIP are enough to adequately plead his retaliation claim.

### 2. Causal Link Between the Adverse Action and the Protected Activity

Defendant argues that because "Plaintiff [did] not allege that [Ms.] Bailey-Charles or [Ms.] Vaughn-Roach specifically linked his calendar entry to pay or the proposed PIP[,]" there is no sufficient causal link between the protected activity and alleged adverse action. Def.'s Mot. at 5. Defendant is mistaken. A "causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity,

-17-

and that the adverse . . . action took place shortly after that activity." Rochon v. Gonzales, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (quoting Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)); see also Alston v. D.C., 561 F. Supp. 2d 29, 43 (D.D.C. 2008) ("a close temporal connection between the protected activity and the adverse action can indeed support an inference of causation.") (internal quotation marks omitted).

Defendant does not dispute that Plaintiff engaged in protected activity when he scheduled a meeting with an EEO counselor. Nor does Defendant dispute that the actual meeting with the EEO counselor was protected. Ms. Bailey-Charles demonstrated her knowledge of the protected activity and threatened an adverse action in her May 22, 2012, conversation with Plaintiff. SAC ¶ 15. She took the threatened action by placing Plaintiff on a PIP just over a month thereafter on June 26, 2012. SAC ¶ 18. Based on these allegations, there is no question that a plausible causal relationship has been adequately pleaded.

Defendant also argues that "[f]rom the facts alleged, it is as likely that [P]laintiff was placed on a PIP because of performance problems, as it is that it was retaliation for seeing an EEO counselor." Def.'s Reply at 4. Plaintiff "is not required, however, in order to state a claim of retaliation, to

allege facts sufficient to negate [Defendant's] alternative explanations for its actions—whatever they may turn out to be." Rochon, 438 F.3d at 1220. Given that Plaintiff is entitled to all reasonable inferences that arise from his allegations, Aktieselskabet, 525 F.3d at 17, it is more than reasonable to infer that Ms. Bailey-Charles was retaliating against him because of his EEO meeting. Plaintiff has sufficiently alleged that he "engaged in protected activity, as a consequence of which [his] employer took a materially adverse action against [him]" and accordingly, has adequately pleaded his claim of unlawful retaliation. Taylor, 571 F.3d at 1320.

## C. Motion for Summary Judgment and Motion to Stay

In the alternative to its Motion to Dismiss, Defendant requests Summary Judgment on Counts I and II of Plaintiff's Complaint. Def.'s Mot. [Dkt. No. 18]. Plaintiff asks the Court to deny Defendant's Motion for Summary Judgment as premature and to treat the District's motion purely as a motion to dismiss. Pl.'s Opp'n at 19 [Dkt. No. 22]. In the alternative, Plaintiff requests a Stay to Obtain Discovery pursuant to Fed. R. Civ. P. 56(d). Pl.'s Mot. for a Stay to Obtain Disc. [Dkt. 21].

At the time of Defendant's Motion, no discovery had been had by either party. Pl.'s Mot. for at Stay to Obtain Discovery at 1. Ordinarily, that alone would make summary judgment

premature. <u>Hollabaugh v. Office of the Architect of the Capitol</u>, 847 F. Supp. 2d 57, 60 (D.D.C. 2012) (holding that a motion for summary judgment was premature in employment discrimination suit where no discovery had been conducted). The Court notes, moreover, that Defendant--prior to filing its Motion for Summary Judgment--requested a stay of discovery. <u>See</u> Joint Status Report (July 30, 2014) [Dkt. No. 27]. Our Court of Appeals has made clear that "fundamentally, under the Federal Rules of Civil Procedure, when a Rule 12(b)(6) motion to dismiss is converted into a motion for summary judgment, all parties must be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56[, and] it is settled that the term 'reasonable opportunity' includes the opportunity to pursue reasonable discovery." <u>First Chicago Int'l v. United Exch. Co., Ltd.</u>, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988). Therefore, Defendant's Motion for Summary Judgment is **denied without prejudice**.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **granted in part and denied in part**, Defendant's Motion for Summary Judgment is **denied without prejudice** and Plaintiff's

Motion for a Stay to Obtain Discovery is **denied as moot.** An Order shall accompany this Memorandum Opinion.

August 26, 2014

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF